IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALVIN SEDEKI KAMARA, | : | No. 3:24cv2249 |
| | : | |
| Petitioner | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| WARDEN LEONARD ODDO, | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Malvin Sedeki Kamara ("Kamara") is an immigration detainee in

the custody of the United States Department of Homeland Security, Immigration

and Customs Enforcement ("ICE").  Kamara commenced this action, when

housed at the Pike County Correctional Facility, by filing a petition for a writ of

habeas corpus under 28 U.S.C. § 2241.  (Doc. 1).  He seeks immediate release

from custody or, in the alternative, an individualized bond hearing.  (Id. at 7).  For

the reasons set forth below, the court will deny habeas relief.

I.    **Background**

Kamara is a citizen and native of Liberia.  (Doc. 11-1, at 4).  On July 8,

2016, Kamara was admitted to the United States at John F. Kennedy

International Airport in New York, New York, on a J-1 Visa.[1]  (Id. at 4-6; Doc. 11-2, at 1).  Kamara was granted leave to stay within the United States until October 31, 2016.  (Doc. 11-1, at 6; Doc. 11-2, at 1).  Kamara stayed within the United States beyond November 1, 2016.  (Doc. 11-1, at 6; Doc. 11-2, at 2).

On July 26, 2016, Kamara married a United States citizen, Kai ma Johnson, in Norfolk, Virginia.  (Doc. 11-3, Declaration of Deportation Officer Zachary Phillips ("Phillips Decl."), ¶ 7).  Kamara and Ms. Johnson subsequently divorced on December 18, 2017, in Norfolk, Virginia.  (Id. ¶ 9).

Kamara then married another United States citizen, Courtney Rae Johnson, on January 3, 2018, in Norfolk, Virginia.  (Id. ¶ 10).  On May 14, 2018, Ms. Johnson filed a Form I-130, Petition for Alien Relative, with the United States Citizenship and Immigration Services ("USCIS"), and Kamara filed a Form I-485, Application to Register for Permanent Residence or Adjust Status.  (Id. ¶ 11).  On December 19, 2018, Kamara appeared for his interview with USCIS; however, Ms. Johnson did not appear.  (Id. ¶ 12).  On January 16, 2019, Kamara filed a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant with USCIS.

---

[1] According to the United States Department of State website, the J-1 Visa "enable[s] foreign nationals to come to the U.S. to teach, study, conduct research, demonstrate special skills or receive on the job training for periods ranging from a few weeks to several years." https://j1visa.state.gov/programs (visited Jan. 27, 2025).

(Id. ¶ 13).  On October 20, 2020, USCIS denied Kamara's petition.  (Id.).  USCIS then denied the I-485 and I-130 applications on January 23, 2023.  (Id. ¶ 20).

From February of 2021, through January of 2023, Kamara was arrested on several occasions and charged with various crimes.  (Id. ¶¶ 14-19).

On April 11, 2023, ICE Enforcement and Removal Operations ("ERO") encountered Kamara when he was detained by law enforcement officials in the state of Vermont.  (Doc. 11-1, at 5-6).  ICE ERO officials determined that Kamara was removable from the United States due to overstaying his visa.  (Id.).  Kamara was therefore taken into ICE custody on April 11, 2023.  (Id.; Doc. 11-3, Phillips. Decl. ¶ 21).  He was charged as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B).[2]  (Doc. 11-1, at 5-6; Doc. 11-3, Phillips Decl. ¶ 23).  Kamara challenged his removal, but an immigration judge denied his claim on September 27, 2023, and he was ordered removed to Liberia.  (Doc. 11-8).  Kamara appealed this decision to the Board of Immigration Appeals ("BIA").  (Doc. 11-9).  On February 29, 2024, the BIA dismissed Kamara's appeal.  (Doc. 11-10).  His removal order became final on that date—February 29, 2024.  See INA § 1241.1(a).

---

[2]  INA § 237(a)(1)(B) (8 U.S.C. § 1227(a)(1)(B)) states: "Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

On July 10, 2024, Kamara filed a motion to reopen with the BIA.  (Doc. 11-11).  And, on July 30, 2024, Kamara filed a motion to stay his removal.  (Doc. 11-12).  On November 21, 2024, the BIA issued an order denying Kamara's motion for a stay.  (Doc. 11-13).  On December 6, 2024, the BIA denied Kamara's motion to reopen.  (Doc. 11-3, Phillips. Decl. ¶ 43).

ICE has been working with officials from the Embassy of Liberia since June of 2024 to effectuate Kamara's removal.  (Id. ¶¶ 30-33, 40-42, 44-48).  On June 20, 2024, Kamara underwent a verification interview with officials from the Government of Liberia.  (Id. ¶ 32).  On July 10, 2024, the Government of Liberia issued a travel document for Kamara with an expiration date of July 11, 2025. (Id. ¶ 33).  Kamara is scheduled for removal to Liberia on a date in the reasonably foreseeable future.  (Id. ¶¶ 47-48).

Kamara is being detained pursuant to 8 U.S.C. § 1231(a).  His removal period commenced when the BIA dismissed his appeal on February 29, 2024. The gravamen of Kamara's habeas petition is that his removal to Liberia is not reasonably foreseeable and therefore he should be released from ICE detention. (Doc. 1).

## II.    Legal Standard

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of

the United States." See 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). Because Kamara filed the instant petition while he was detained within the jurisdiction of this court, is still currently detained by ICE, and asserts that his continued detention violates due process, this court has jurisdiction over his Section 2241 petition. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Spencer v. Kemna, 523 U.S. 1, 7 (1998).

## III.    Discussion

ICE is detaining Kamara under the post-removal detention provision of the INA, which is codified at § 1231(a).[3]  Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'" Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022).  Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A).  The noncitizen must be detained during this 90-day timeframe, id. § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien" (emphasis added)), which is "referred to as the 'removal period.'" Id. § 1231(a)(1)(A).  That 90-day period begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the

---

[3]  Kamara does not dispute that his detention falls under Section 1231(a).  (See Doc. 1, at 6 (citing Section 1231(a)(6) and Zadvydas v. Davis, 533 U.S. 678 (2001)); id. at 6 ("I am an alien detained under 8 U.S.C. Section 1231(a)")).

alien is released from [non-immigration] detention or confinement." Id. §

1231(a)(1)(B)(iii).

Following expiration of the 90-day removal period, certain noncitizens

"may" be detained if they fall into one of four distinct categories: "(1) those who

are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on

certain specified grounds; (3) those [determined] 'to be a risk to the community';

and (4) those [determined] to be 'unlikely to comply with the order of removal.'"

Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).  There is

no dispute that Kamara falls within one of the categories of noncitizens covered

by § 1231(a)(6) and that he is being detained under this provision of the INA.

The text of § 1231(a)(6) does not contain an express limit on the duration a

noncitizen can be detained under its authority.  In 2001, the Supreme Court

decided Zadvydas v. Davis, 533 U.S. 678 (2001), which held that post-removal

detention for six months is "presumptively reasonable." Id. at 701.  Beyond six

months, if removal is no longer reasonably foreseeable, continued detention is no

longer authorized under § 1231(a)(6).  At that point, the Supreme Court

explained, noncitizens detained under Section 1231(a)(6) past the six-month

presumptively constitutional period may bring a claim in a federal habeas petition

asserting that ICE no longer has the statutory authority for continued detention.

Id. at 699-701.  In such a proceeding, the Supreme Court instructed, the

6

noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" Id. at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." Id.

Thereafter, in Johnson v. Arteaga-Martinez, the Supreme Court abrogated the Third Circuit's holding in Guerrero Sanchez v. Warden York Cnty. Prison, 905 F.3d 208 (3d Cir. 2019), that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." Arteaga-Martinez, 596 U.S. at 576. Importantly, however, the Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. See id. at 583-84. Moreover, the government reassured the Arteaga-Martinez Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." Id. at 583.

Here, Kamara brings an as-applied procedural due process challenge. He claims that his unreasonably prolonged detention under § 1231(a)(6) without a bond hearing at which the government bears the burden of justifying his continued detention violates his rights under the Due Process Clause. (Doc. 1,

7

at 6). In support, Kamara contends that there is reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. (Id.).

Respondent asserts that Kamara is not entitled to habeas relief under Zadvydas because he stands to be deported to Liberia. (Doc. 10). Respondent posits that Kamara failed to offer any evidence to suggest that his removal will not take place within the reasonably foreseeable future. (Id. at 10). Thus, respondent argues that the burden cannot shift to the Government to justify his continued detainment. (Id.; see also Zadvydas, 533 U.S. at 701).

The court finds that Kamara's detention under Section 1231(a)(6) has not become unconstitutionally prolonged. He has failed to establish "good reason to believe" that there is not a "significant likelihood of removal in the reasonably foreseeable future." Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021). Kamara's unsupported arguments are insufficient to substantiate a constitutional violation. Thus, his due process claim fails at the first step.

Even if Kamara had carried his burden, respondent has rebutted that showing. ICE is actively working to effectuate Kamara's removal to Liberia. On June 20, 2024, Kamara underwent an interview with the Embassy of Liberia. (Doc. 11-3, Phillips Decl. ¶ 32). On July 10, 2024, the Government of Liberia issued a travel document for Kamara with an expiration date of July 11, 2025. (Id. ¶ 33). Kamara was scheduled to be removed to Liberia on December 16,

2024, but the escorting officer fell ill, and the removal was postponed. (Id. ¶ 44). Kamara has been rescheduled for removal to Liberia on a date in the reasonably foreseeable future. (Id. ¶¶ 47-48). Respondent represents that Kamara's flight has been scheduled and he is currently scheduled to be removed before the end of February 2025. (Doc. 10, at 8, 10-11).

In addition, ICE ERO conducted an administrative custody review on December 27, 2024, as required by 8 C.F.R. § 241.4. (Doc. 11-3 ¶ 45). Following this review, ICE has continued Kamara's detention because "he had not established that he was not a flight risk or a danger to the community" and because his removal will take place "in the reasonably foreseeable future where ERO is in possession of a valid travel document." (Id.).

The court, therefore, will deny Kamara's Section 2241 petition.

## III.    Conclusion

Based on the foregoing, the court will deny Kamara's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

An appropriate order shall issue.

Date: January 27, 2025

JUDGE JULIA K. MUNLEY
United States District Court

9